UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD W. SCHNEIDER,

                    Plaintiff,

-against-

WAL-MART STORES, INC., WAL-MART
STORES EAST, LP, and WAL-MART
ASSOCIATES, INC.,

                    Defendants.

No. 16-cv-2010 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Ronald W. Schneider brings this action against Defendants Wal-Mart Stores, Inc, Wal-Mart Stores East, LP, and Wal-Mart Associates, Inc and alleges violations of the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq. ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"). (Second Am. Compl., ECF No. 24.) Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 52) pursuant to Federal Rules of Civil Procedure Rule 56. (Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. pp. 10 – 11, ECF No. 53.) For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

The following facts are drawn from the parties' 56.1 submissions and the record, and they are undisputed unless otherwise noted.

At all times relevant to this case, Plaintiff, an individual with cerebral palsy, was employed by Defendants as an associate in the lawn and garden department. (Pl.'s 56.1 ¶ 1, ECF No. 59.) He reported directly to the department manager, Darryl Underwood, who reported to the store's

1

assistant managers. (*Id.*) Throughout his employment at Wal-Mart, Plaintiff was assisted by a job coach supplied by Access, a non-profit entity providing vocational support to disabled individuals. (*Id.* ¶ 2.) As part of the program, Plaintiff's job coach visited him at work twice a month. (*Id.* ¶ 3.) The job coach was not a Wal-Mart employee, but Wal-Mart does maintain a coaching policy.

To track employee improvement and discipline, Wal-Mart maintains a "Coaching" policy, which provides for a first, second, and third written coaching and termination if an employee is issued a fourth coaching within a twelve-month period. (*Id.* ¶ 4.) Wal-Mart also maintains an Open Door policy through which any employee can challenge a disciplinary decision. (*Id.* ¶ 18); (Davidson Tr. 37:1 – 17.)

On December 17, 2011, a Wal-Mart assistant manager, Colleen Cichon, issued Plaintiff his first coaching for working 1.44 hours of overtime. (*Id.* ¶ 5.) Crystal Sparks, another Wal-Mart assistant manager, issued Plaintiff a second coaching on December 20, 2011. (*Id.* ¶ 6.) On that day, Ms. Sparks instructed Plaintiff to zone the seasonal department and noticed that Plaintiff had not completed this task after some time.[1] (*Id.*) Parties dispute the circumstances and conditions surrounding this request, but they agree that when Ms. Sparks located Plaintiff, he told her that he was going to take his lunch break which Plaintiff asserts was mandatory to avoid working overtime. (*Id.*) Plaintiff received his third coaching after an incident on February 12, 2012. (*Id.* ¶ 7.) That day, Ms. Sparks had asked Plaintiff to zone the seasonal department and later noticed that the department had not been properly zoned. (*Id.* ¶ 7); (Schneider Tr. 58:16 – 23; 59:21 – 24, 60:11 – 22); (Varghese Decl. Ex. 12, ECF No. 60.) When she approached Plaintiff about the issue, he loudly stated "I'm doing returns, end of discussion" in front of customers. (*Id.* ¶ 7); (Schneider Tr. 58:16 – 23; 59:21 – 24, 60:11 – 22); (Sparks Tr. 98:3 – 16.) Also, according to Plaintiff, Ms.

---

[1] To "zone" means to clean up a section of the store and make sure that section is presentable to store customers. (Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. p. 4 n.3, ECF No. 53.)

2

Sparks "belittle[d] the manner in which Mr. Schneider spoke, in clear reference to the speech impediment created by his disability," and she attempted to intimidate him. (Pl.'s 56.1 ¶ 7.)

On November 27, 2012, Plaintiff was working a shift attending to returns in the lawn and garden department under standing instructions issued by Mr. Underwood. (*Id.* ¶ 8.) Christine Beach, a Wal-Mart assistant manager, told Plaintiff to stop what he was doing and zone the seasonal department. (*Id.*) Plaintiff responded that he would do so after he finished processing returns. (*Id.*) Ms. Beach again told Plaintiff to zone, and he refused. (*Id.*) Ms. Beach then brought Plaintiff to the manager's office where, along with an assistant manager Daniel Davidson, she again told him to zone the seasonal department. (*Id.* ¶ 9.) At some point, Plaintiff left the office and pushed a cart out of his way. (*Id.* ¶ 11.) After observing Plaintiff's behavior upon leaving the office, Mr. Davidson called Plaintiff back in and informed him he was being written up. (*Id.* ¶ 12.) As a result, Plaintiff received his fourth coaching and was terminated. (*Id.*)

The day after his termination, Plaintiff called his job coach, Julius Castro, and Mr. Castro and Plaintiff went to the Wal-Mart store that same day to meet with co-manager Denise Ruocco and Mr. Davidson. (*Id.* ¶ 13.) Mr. Castro asked that Plaintiff be reinstated, and Ms. Ruocco instructed Plaintiff to contact the store manager, Bill Kirsch, because she lacked the authority to overturn the discharge. (*Id.*) Mr. Castro arranged to meet with Mr. Kirsch, but upon arriving to the meeting, Plaintiff and Mr. Castro learned that Mr. Kirsch had been called away to a different store. (*Id.* ¶ 14.) Plaintiff spoke with Mr. Kirsch by telephone and was informed that his termination would stand. (*Id.*) Mr. Castro did not follow up with Mr. Kirsch or otherwise challenge Plaintiff's dismissal. (*Id.* ¶ 15.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 29, 2013. (Second Am. Compl. ¶ 8.) On September 11, 2015,

the EEOC issued a determination that there is reasonable cause to believe that Defendants discriminated against Plaintiff based on his disability, and on December 21, 2015 the Plaintiff received a Notice of Right to Sue from the EEOC. (*Id.* ¶¶ 9 – 10.) Plaintiff initiated the action presently before this Court on March 17, 2016. (ECF No. 1.)

## **LEGAL STANDARDS**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] . . . affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). A fact is material if a dispute over that fact could impact the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Id.* (quotations and citations omitted).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment should fail. *Id.* at 258. Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotations and citations omitted). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing

that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted). Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (noting that such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"). However, the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. If the Court finds that one party to a case has "no real support for its version of the facts," a motion for summary judgment should be granted. *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d

494, 498 (2d Cir. 1962).

## DISCUSSION

I. **Timeliness of NYSHRL Claims**

Claims arising under the NYHRL, both NYSHRL and NYCHRL, are subject to a three-year statute of limitations. *See George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016). Although the Second Circuit has not yet decided whether the filing of a charge with the EEOC tolls the statute of limitations on NYSHRL claims, numerous courts in this Circuit have determined that filing an EEOC charge does toll those claims. *Allen v. N.Y. City Dep't of Envtl. Prot.*, 51 F. Supp. 3d 504, 511 (S.D.N.Y. 2014); *see, e.g.*, *Cameron v. N.Y. City Dep't of Educ.,* No. 15-CV-9900(KMW), 2018 WL 1027710, at *12 (S.D.N.Y. Feb. 21, 2018) ("In sum, the cases [the d]efendants cite do not overcome the clear trend in this district that the statute of limitations on NYCHRL actions is tolled during the pendency of a complaint filed with the EEOC."); *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693(SJF)(AKT), 2017 WL 9485647, at *9 (E.D.N.Y. Feb. 23, 2017); *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 230 (N.D.N.Y. 2013); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454(RA)(JLC), 2013 WL 3487032, at *23 (S.D.N.Y. July 9, 2013) ("[N]umerous courts have found that filing a charge with the EEOC is sufficient to toll the statute of limitations on related NYSHRL and NYCHRL claims.").

Defendants argue that the Second Circuit "signaled . . . that an NYSHRL claim is *not* tolled during the pendency of proceedings before the EEOC" in *Castagna v. Luceno*, 744 F.3d 254 (2d Cir. 2014). (Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. pp. 10 – 11.) However, *Castagna* is not anagolous to the case currently before the Court. In *Castagna*, the Second Circuit held that the filing of an EEOC charge does not toll the time for filing state tort

claims, but it did not address whether the same is true for NYSHRL claims. *Castagna*, 744 F.3d at 258. Defendants would have this Court extend this *Castagna* holding to NYSHRL claims as well. However, there is no support in the *Castagna* opinion for such an interpretation, and at least one court has previously rejected Defendants' exact argument. *Cameron*, 2018 WL 1027710, at *12 (holding that the NYSHRL claim tolled with the filing of the EEOC claim and rejecting Defendants' argument that *Castagna* suggests that an EEOC complaint does not toll the statute of limitations for claims under the NYSHRL).

Consistent with the clear trend in this Circuit, the Court holds that the filing of the EEOC tolled Plaintiff's NYSHRL claims and that those claims are timely. *See id.*

## II. ADA and NYSHRL claims

"A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards as govern federal ADA claims." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000).[2] Therefore, the Court will analyze Plaintiff's ADA and NYSHRL claims together, below.

### A. Discriminatory Termination

On summary judgment, the plaintiff has a *de minimus* burden to establish a *prima facie* case of discrimination. *Duprey v. Prudential Ins. Co. of Am.*, 910 F. Supp. 879, 885 (N.D.N.Y. 1996). To establish this *prima facie* case, a plaintiff must show that: (1) his employer is subject to the applicable law; (2) he suffers from a disability within the meaning of the applicable law; (3) he was qualified and able to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action, which includes

---

[2] The primary differences between the ADA and NYSHRL with respect to disability discrimination are definitional and relate to the definition of disability. *See Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 253 – 54 (E.D.N.Y. 2015). The parties here do not dispute that Plaintiff has a disability or any other definitional issues.

termination, because of his disability. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); *Ryan v. Grae & Rybicki*, 135 F.3d 867, 869 – 70 (2d Cir. 1998). If there is no direct evidence of a discriminatory discharge, the claim will be analyzed under the *McDonnell Douglas* burden-shifting framework. *McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013); *Anderson v. Nat'l Grid*, *PLC*, 93 F. Supp. 3d 120, 140 (E.D.N.Y. 2015); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Once the Plaintiff has established a *prima facie* case, under *McDonnell Douglas*, the burden shifts to the defendant to introduce admissible evidence of a "legitimate non-discriminatory reason for the discharge." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). If the defendant proffers a non-discriminatory reason for termination, then summary judgment for the defendant is appropriate unless the plaintiff can demonstrate that the proffered reason for termination is pretext for discrimination. *McBride*, 583 F.3d at 96.

Here, parties do not dispute that Plaintiff has satisfied the first three elements of a *prima facie* case; whether Plaintiff meets the fourth element is in dispute. To satisfy this element, Plaintiff has a "*de minimis* burden to produce direct or circumstantial evidence that would lead a reasonable fact-finder to conclude that her discharge occurred under circumstances giving rise to an inference of discrimination." *Duprey v. Prudential Ins. Co. of Am.*, 910 F. Supp. 879, 885 (N.D.N.Y. 1996). Evidence leading to the inference of discrimination may include discriminatory comments made by the defendant relating to a disability, failure to take actions required for a disabled employee to return to work, or preferential treatment of employees similarly situated to the plaintiff who are not members of the plaintiff's protected class. [3] *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997); *Prindle v. City of*

---

[3] There is mention that Mr. Kirsch overturned some termination decisions for other employees, but there is no evidence that those employees were similarly situated to Plaintiff. (Davidson Tr. 43:6 – 21.)

8

*Norwich*, No.15-CV-1481(GTS)(DEP), 2018 WL 1582429, at *14 (N.D.N.Y. Mar. 27, 2018); *Wasley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 403 (S.D.N.Y. 2013); *Jackson v. Heidelberg LLC*, 02-CV-6536, 2005 WL 735961, at *6 (W.D.N.Y. Mar. 31, 2005).

Here, Plaintiff presents sufficient evidence for a reasonable jury to find that he was terminated in circumstances giving rise to the inference of discrimination. Specifically, from the evidence in the record, a reasonable jury could conclude that Defendants applied their Open Door Policy in a discriminatory manner. Mr. Davidson, Mr. Kirsch, and Ms. Beach testified that when an employee wants to meet with a co-manager or a store manager to challenge a disciplinary action, the managers are required to meet with the employee as part of the Open Door Policy. (Davidson Tr. 41:18 – 23); (Kirsch Tr. 60:5 – 13); (Beach Tr. 53:12 – 21.) The purpose of this policy is so that "every associate can, if they feel they are being mistreated . . . go up to the highest manager and be heard." (Beach Tr. 54:10 – 16.) According to testimony from several Wal-Mart managers, multiple Wal-Mart associates, like Plaintiff, contested coachings and terminations under this policy; they were permitted to meet with management, their terminations were investigated, and on some occasions those terminations were overturned. (Kirsch 60:17 – 25); (Davidson Tr. 38:5 – 17; 41:1 – 11; 42:18 – 22; 43:6 - 21); (Beach Tr. 54:8 – 25; 55:1 – 21.); (Sparks 52:18 – 25.) Mr. Kirsch testified that he always conducted an investigation if an employee contested his or her termination and would overturn the termination if he thought any of the coachings were not fair. (Kirsch Tr. 62:9 – 23, 63:7 – 19.) Here, Plaintiff contested his termination when he consulted with his job coach and requested the meeting about his termination with Mr. Kirsch. (Kirsch Tr. 167:10 – 14.) However, there is no evidence that Mr. Kirsch investigated the termination or any of the previous coachings; Plaintiff called Mr. Kirsch shortly after Plaintiff was terminated and was merely told that the termination

9

would stand. (Schneider Tr. 198:19 – 21.) A reasonable jury could conclude that this treatment is inconsistent with Walmart's Open Door policy and the treatment of other associates, which was in line with the policy.[4]

A plaintiff is only required to meet a "minimal and *de minimus*" burden to state a *prima facie* case at the summary judgment stage. *Berube v. Great Atl. & Pac. Tea Co., Inc.*, 348 F. App'x 684, 686 (2d Cir. 2009) (internal quotation marks omitted). Plaintiff has satisfied that minimal burden.

Next, the Court will examine whether Defendants' stated reason for Plaintiff's termination, his accumulation of four written coachings in a twelve-month period, is mere pretext for discrimination. Pretext may be demonstrated by additional evidence that the employer's proffered reason is not credible or by reliance on the evidence supporting the *prima facie* case alone. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994). "The defendant's burden is [ ] light. The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis omitted). Disciplinary action based on poor performance or failure to follow reasonable workplace rules is not indicative of a pretext for disability discrimination. *See*

---

[4] Plaintiff also asserts that Defendants made discriminatory comments to and about Plaintiff. Specifically, Plaintiff cites to (1) an incident on December 20, 2011 in which Ms. Sparks told Plaintiff that an area of the store needed "Ron Love" when she asked him to zone; (2) an incident on February 12, 2012 in which Ms. Sparks pretended not to hear him to provoke and intimidate Plaintiff, and (3) Ms. Beach's regular practice of telling him that his best work was not good enough. (Schneider Tr. 56:8 – 9, 19 – 24; 57:1 – 10, 58:21 – 23, 59:4 – 14.) Assuming that the Plaintiff presented sufficient evidence from which a reasonable jury could conclude that these comments occurred, isolated comments, like the first two described above, "do not lead to an inference of discriminatory intent." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017). There is no evidence that the comments from Ms. Sparks were more than isolated comments. Additionally, the third set of comments appear to relate to Plaintiff's job performance, and there is no other evidence in the record to suggest that these comments were discriminatory. *See Kho v. N.Y. and Presbyterian Hosp.*, No. 16-CV-5910(RA), 2018 WL 4759739, at *10 (S.D.N.Y. Sept. 30, 2018). Drawing all reasonable inferences in Plaintiff's favor, *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010), the Court concludes that there is insufficient evidence from which a reasonable jury could conclude that these comments created an inference of discrimination.

*Jackson v. Nor Loch Manor HCF*, 134 F. App'x 477, 478 (2d Cir. 2005) (affirming the grant of summary judgment for the defendant because the record indicated that the plaintiff was terminated due to her failure to follow instructions and employment policies); *Molina v. City of Rochester*, No13-CV-6607, 2017 WL 1194493, at *10 (W.D.N.Y. Mar. 30, 2017) (holding that the record showed that the plaintiff was terminated due to his poor performance and misconduct at work); *Missick v. City of New York*, 707 F. Supp. 2d 336, 350 (E.D.N.Y. 2010) (holding that evidence of satisfactory prior performance, subjection to a disparate level of scrutiny, and a pattern of personal slights was not sufficient to show pretext for her negative performance reviews).

Here, Plaintiff does not dispute that he engaged in the workplace misconduct which led to each coaching. On December 17, 2011, Plaintiff received his first coaching which was for accruing over one hour of overtime without permission from management. (Varghese Decl. Ex. 10.) Plaintiff testified that he was aware of Defendants' overtime policy prior to the day he worked overtime and does not dispute that he worked overtime that day. (Schneider Tr. 119:10 – 24; 120:1 – 6, 19 – 24; 121:1 – 4.). Plaintiff was issued a second coaching on December 20, 2011 for failure to follow instructions when told to zone the seasonal area by 7 PM. (Varghese Decl. Ex. 11.) While Plaintiff testified that he took his lunchbreak before 7 PM to avoid working overtime, he does not dispute that he was told to zone the area by 7 PM and failed to do so. (Schneider Tr. 134:13 – 15; 137:22 – 24.) Plaintiff received his third coaching on February 12, 2012. (Varghese Decl. Ex. 12.) In that incident, Plaintiff raised his voice with his managers when they asked him to zone the seasonal area because he was currently working on processing returns and wanted to complete that task. (Schneider Tr. 58:16 – 23; 59:21 – 24, 60:11 – 22); (Sparks Tr. 98:3 – 16, 132:12 – 23.) Plaintiff does not dispute these facts. On November 27,

2012, Plaintiff received his fourth written coaching for insubordination and aggressive behavior on the sales floor and was terminated, consistent with Defendants' policy of terminating employees upon receipt of their fourth coaching. (Beach Tr. 145:23 – 25; 147:3 – 5; 149:15 – 20; 153:20 - 23); (Davidson Tr. 80:18 – 22). Plaintiff testified that he engaged in the misbehavior which led to the discipline. He heard Ms. Beach direct him to zone seasonal, he refused, and he pushed a cart when he left the office while he was upset. (Schneider Tr. 177:20 – 24; 178:1 – 8; 180:3 – 13; 186:4 – 5; 190:10 – 20; 191:1 – 2.)

Plaintiff attempts to call Defendants' reason for terminating him into question. First, he points to his nineteen years as a Wal-Mart employee prior to his termination. However, "[t]he mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus." *Missick v. City of New York*, 707 F. Supp. 2d 336, 350 (E.D.N.Y. 2010). Second, Plaintiff testified that he endured comments "demonstrating a clear bias against individuals with cerebral palsy." (Pl.'s Opp'n, p. 20, ECF No. 58.) Plaintiff claims that on one occasion a manager pretended not to hear him in a way that made him feel intimidated, that the same manager told him once that an area he was assigned to zone could use some "Ron love," and that another manager made routine comments about his speed and the quality of his work.[5] (Schneider Tr. 56:8 – 9, 19 – 24; 57:1 – 10, 58:21 – 23, 59:4 – 14.) None of these comments either addressed or appeared to allude to Plaintiff's disability, and the record contains nothing to suggest that they were discriminatory. *See Paul v. Lenox Hill Hosp.*, No 13-CV-1566(CBA)(LB), 2016 WL 4775532, at *13 (E.D.N.Y. Jan. 15, 2016) (holding that, in the

---

[5] Defendants dispute making these statements, (Sparks Tr. 81:20 – 25), but this dispute is immaterial because even if the Defendants made the statements, a reasonable jury could not determine that they were evidence of discrimination for the reasons stated above. Moreover, the only evidence supporting the large majority of the alleged discriminatory comments is Plaintiff's testimony in which he only speculates that the comments were motivated by discriminatory intent. There is no evidence other than Plaintiff's conjecture that the statements were discriminatory. This is not enough to support an inference of discrimination. *Brown v. Northrop Grumman Corp.*, No. 12-CV-1488(JS)(GRB), 2014 WL 4175795, at *7 (E.D.N.Y. Aug. 19, 2014).

absence of other evidence of discrimination, the defendant's comments that about wanting a "different face" for the workplace were benign).

Plaintiff's testimony is only evidence of isolated incidents and stray remarks, at most[6] Plaintiff provides no further evidence of a discriminatory culture or discrimination directed at Plaintiff to support a reasonable finding that Defendants' reason for terminating him was mere pretext. "This Court has repeatedly held that 'stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination.' " *Adams v. Master Carvers of Jamestown, Ltd.*, 91 F. App'x 718, 722 (2d Cir. 2004) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).

There is no evidence from which a reasonable jury could conclude that his termination was pretext for discrimination. Accordingly, the Court must grant Defendants summary judgment on Plaintiff's discriminatory discharge claims.

### B. Failure to Accommodate

A plaintiff establishes a *prima facie* claim for disability discrimination based on a failure to accommodate by showing that (1) the plaintiff is a person with a disability as defined by the ADA or NYSHRL; (2) the employer is covered by the relevant statute and had notice of the plaintiff's disability; (3) the plaintiff could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make those reasonable accommodations. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2004)). The plaintiff bears the burden of showing that "the accommodation exists that permits her to perform the job's essential functions." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). If

---

[6] *See supra* n.4.

the plaintiff satisfies this burden, the defendant has the burden of proving that the proposed accommodation is not reasonable. *Id.* Under the ADA, reasonable accommodation may include making facilities used by employees readily accessible to those individuals with disabilities, job restructuring, reassignment, adjustment of examinations or policies, the provision of qualified readers, and "other similar accommodations." 42 U.S.C. § 12111(9). The NYSHRL has a similar interpretation of reasonable accommodation: "provision of an accessible worksite, acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business, program or enterprise of the entity from which action is requested." N.Y. Exec. Law § 292(21-e).

Parties do not dispute the first two elements of the analysis. They dispute whether Plaintiff required any accommodation in order to perform the essential functions of his job and whether Defendants failed to provide that accommodation. According to Plaintiff, due to his cerebral palsy, he had difficulty understanding instructions and was slower than other employees to complete tasks. (Schneider Tr. 70:12 – 15; 103:8 – 21); (Pl.'s 56.1 ¶¶ 10, 39, 41 & 45.) To accommodate these issues, he required extra time, clear and repeated instructions, and the services of a job coach. (*Id.*) However, Defendants correctly point out that the Second Amended Complaint does not allege that Wal-Mart denied Plaintiff an accommodation in the form of modification to supervisory methods and that Plaintiff's reasonable accommodation claim is limited to those relating to his job coach.[7] (Defs.' Reply p. 4, ECF No. 56.) "It is well

---

[7] Plaintiff states that as a result of his disability he requires extra time to process instructions and help understanding interpersonal communication (Second Am. Compl. ¶ 20.) He also argues that on at least one occasion a manager did not give him sufficient time to process a situation or perform a task. (*See id.* ¶ 60.) However, all of his accommodation-related allegations in the Second Amended Complaint focused on Wal-mart's alleged failure to provide him with sufficient accommodation related to his job coach and did not concern any accommodation relating to management style. Even if Plaintiff had adequately asserted that Defendants failed to accommodate his disability by failing to provide him with adequate time or clear instructions, those accommodations are not

14

settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment." *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016); *see Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations Avillan raised for the first time in response to Potter's summary judgment motion."). Therefore, the Court will only consider Plaintiff's failure to accommodate claim as it relates to his job coach.

In the Second Amended Complaint, Plaintiff states that Defendants failed to accommodate his disability by failing to consult or engage in any discussion with his job coach about any of the written warnings he received in 2011 and 2012 or about the decision to terminate Plaintiff. (Second Am. Compl. ¶¶ 92, 107.) Under the EEOC guidelines, a job coach is a "professional who assists individuals with severe disabilities with job placement and job training." E.E.O.C. Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities (Mar. 25, 1997), 1997 WL 34622315, at *13 n.63. Plaintiff does not allege, nor does the record support, that Defendants interfered with the job coach assisting Plaintiff in job placement or training. In fact, Plaintiff does not allege that Defendants interfered with the job coach in any way that would have affected his ability to perform his essential job functions. A disciplinary process hardly requires any action on the part of the disciplined

---

reasonable. "An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be 'sufficiently direct and specific' to give the employer notice of the needed accommodation." *Nadeau v. Mary Hitchcock Mem'l Hosp.*, No. 14-CV-64, 2016 WL 3248266, at *9 (D.Vt., June 13, 2016) (quoting *Tobin v. Liberty Mut. Ins. Co.,* 553 F.3d 121, 129 (1st Cir. 2009)). "The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace." *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir. 2001). A request for clear instructions and extra time is vague, particularly in the dynamic context of retail, where employees are assigned to a variety of tasks with time sensitive deadlines. *See Nugent v. St. Luke's/Roosevelt Hosp. Ctr.,* No. 05–CV–5109, 2007 WL 1149979, at *21 (S.D.N.Y. Apr. 18, 2007) (holding that the vague request for "a little extra time . . . as well as understanding and assistance" was not a request for a reasonable accommodation). There is no evidence in the record to suggest that Plaintiff made a direct or specific request to his employers for an accommodation in the form of modification of supervisory methods.

employee and any required action by the employee, while related to their personal employment, could not be related to the performance of an essential job function. *See Ott v. H & M Hennes & Mauritz LP,* No. 14-CV-556, 2015 WL 6393821, at *9 (E.D. Wis. Oct. 22, 2015)("Because there is no evidence that communicating during the [termination] meeting was an essential function of [the plaintiff's] job, [the defendant] did not violate the ADA when it denied his request for an interpreter at the meeting."); *Novella v. Wal–Mart Stores, Inc.*, 226 F. App'x 901, 903 (11th Cir. 2007) (holding that communication at a termination meeting was not an "essential function" of the employee's job and thus employer did not violate the ADA by failing to provide a deaf employee a sign language interpreter for a termination meeting).

The cases Plaintiff cites for support that failing to consult the job coach in the discipline process denied Plaintiff "an essential accommodation" are easily distinguishable from the matter before the Court.[8] *Glaser v. Gap, Inc.* concerned a plaintiff who was denied a job coach during his interview and never received a job coach throughout his employment. 994 F. Supp. 2d 569, 577 (S.D.N.Y. 2014). Similar to the plaintiff in *Glaser*, the plaintiff in *Menchaca v. Maricopa Community College District* was denied job coach. 595 F. Supp. 2d 1063 1072 – 73 (D. Az. 2009). Contrastingly, Plaintiff in this case enjoyed the services of a job coach throughout his employment. (Schneider Tr. 35:21 – 24, 36:1 – 4; 37:13 – 19; 41:16 – 24; 42:1 – 11.) Plaintiff cites *E.E.O.C. v. Dollar General Corp.* to support the idea that a temporary job coach can be considered a reasonable accommodation, but the court specified in that case that this referred to a job coach for temporary *training* purposes. 252 F. Supp. 2d 277, 292 – 93 (M.D.N.C. 2003). None of these cases involve a court finding that the involvement of a job coach in a disciplinary

---

[8] Plaintiff also misstates the standard. (Pl.'s Opp'n p. 12, ECF No. 58.) The standard is not whether the employer provided the job coach with sufficient information to allow the job coach to best counsel Plaintiff, but whether the employer's failure to include the job coach in the disciplinary process before and during the discipline prevented Plaintiff from performing essential job functions.

16

process is a reasonable accommodation. Based on the available case law, the Court determines that employers are not required to consult with job coaches before disciplinary action or to otherwise involve them in the disciplinary process. As the record does not contain sufficient evidence from which a reasonable factfinder could conclude that Defendants denied Plaintiff a reasonable accommodation, Defendants' motion for summary judgment on the failure to accommodate claim must be granted.

## C. Failure to engage in an interactive process regarding a reasonable accommodation

Plaintiff asserts that Defendants failed to engage in a good faith interactive process as required under the ADA and NYSHRL prior to failing to involve the job coach in disciplinary discussions. (Second Am. Compl. ¶¶ 98, 113.)

However, as discussed above, Plaintiff's requested accommodation, including his job coach in the disciplinary process, was not a request for a reasonable accommodation. (*See supra* Part II(B).) As a matter of law, Defendants are not required to engage in an interactive process if there is no evidence that the accommodation is possible. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 100 – 01 (2d Cir. 2009). Plaintiff presents no evidence from which a reasonable jury could conclude that including the job coach in Wal-Mart's disciplinary process was possible. There is no evidence in the record that Plaintiff's job coach had ever been permitted to participate in disciplinary decisions or that Plaintiff ever sought out an interactive process to involve his job coach in disciplinary decisions.

Additionally, "the ADA imposes no liability for an employer's failure to explore alternative accommodations when the accommodations provided to the employee were plainly reasonable." *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 98 (2d Cir. 2015). Wal-Mart did not

interfere with the job coach's work as Plaintiff's job coach; it simply did not involve the job coach in disciplinary decision-making because that task is outside of the job coach's responsibilities and is also not a reasonable accommodation. Julius Castro, Plaintiff's job coach, testified that his position required him to go to Plaintiff's worksite to observe Plaintiff at work and then met with Plaintiff afterwards to discuss any issues or problems. (Castro Tr. 16:22 – 24; 17:1 – 3.) Plaintiff does not dispute that Wal-Mart allowed his job coach to continue performing the functions of a job coach throughout Plaintiff's employment, including Mr. Castro's visits to Plaintiff at Wal-Mart a couple of times a month. (Schneider Tr. 35:21 – 24, 36:1 – 4; 37:13 – 19; 41:16 – 24; 42:1 – 11.)

In the absence of any evidence from which a reasonable jury could conclude that Defendants failed to engage in an interactive process, Defendants are granted summary judgment on those claims.[9]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in its entirety. The Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 52 and enter judgment in favor of Defendants.

Dated: January 23, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[9] Defendants also seek summary judgment on Plaintiff's hostile work environment claims under ADA and NYSHRL, to the extent that Plaintiff intended to assert such claims. (Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. pp. 24 – 25.) Plaintiff did not address any hostile work environment claim in his opposition. "[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims." *Jackson v. Fed. Express,* 766 F.3d 189, 195 (2d Cir. 2014). Therefore, the Court deems any hostile work environment claim to be abandoned.